**FEDERAL ELECTION COMMISSION, Plaintiff,**

v.

**NATIONAL RIFLE ASSOCIATION OF AMERICA, et al., Defendants.**

**Civ. A. No. 81–1218.**

United States District Court, District of Columbia.

Jan. 6, 1983.

**1332**

Charles N. Steele, Lawrence N. Noble, Marsha G. Gentner, Washington, D.C., for plaintiff.

James J. Featherstone, David H. Martin, National Rifle Ass'n of America, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

### THOMAS F. HOGAN, District Judge.

### I. INTRODUCTION

This case is before the Court on a motion to dismiss by defendants[1] under Rule

1. The defendants are the National Rifle Association of America ("NRA"), the National Rifle Association Institute for Legislative Action ("NRA–ILF"), and the National Rifle Association Political Victory Fund ("NRA–PVF").

2. To summarize, the FEC alleges that the defendants either received or expended funds in violation of FECA in that the NRA and its lobbying arm, the NRA–ILF, by advancing monies and services to the NRA–PVF, made illegal payments under the Act. Defendants respond that the advances in question were merely a bookkeeping convenience which were *de mini-*

12(b)(1) for lack of subject matter jurisdiction. In a Memorandum Opinion and Order, dated November 18, 1982, and attached as an Appendix hereto, this Court was, based on the record before it at that time, unable to decide whether the Federal Election Commission ("FEC") had adequately performed its statutorily mandated presuit enforcement duties under the Federal Election Campaign Act, as amended ("FECA" or the "Act"), 2 U.S.C. §§ 431–55, with respect to the present action against the defendants in this suit, and whether said failure(s), if any, on the part of the FEC, posed a jurisdictional bar to suit under the Act. In response to the Court's Order, the parties filed affidavits attesting to the procedures adhered to by the FEC, submitted supplemental legal argument on the jurisdictional nature of the alleged defects, and appeared before the Court, on December 16, 1982, to present additional evidence and further argue their respective positions.

In the November 18, 1982 Memorandum, the Court set forth the respective claims and arguments of the parties in detail, and it is not necessary to repeat those positions herein.[2] The Court explained therein the clear and unmistakable duty of the FEC to follow certain procedures prior to instituting suit under the Act. As the Court noted, four steps are required under Section 437g of the Act, including:

(1) a determination that reasonable cause to believe a violation has occurred or is about to occur, and the provision of notice and an opportunity to comment to the respondent;

(2) an investigation of the allegations by the FEC;

*mus* in nature and effect, and that they were independent expenditures, in any event, which are not violations of the Act.

The Court also denied defendants' motion to dismiss, at that time, on the ground that conciliation efforts extended beyond the statutorily prescribed 90-day period and reserved for future decision the question of the adequacy of the FEC's attempts to conciliate and find probable cause with respect to each and every charge in this suit. Memorandum Opinion and Order, *supra,* at 1332–1333 & n. 2.

(3) a determination of probable cause that a violation has occurred or is about to occur after receiving a brief from the general counsel and a response from the alleged violator; and

(4) an attempt for at least 30 days to correct or prevent the alleged violations by informal means of "conference, conciliation, and persuasion."

Then, only after the FEC exhausts these steps, and affirmatively votes, by at least 4 of its members, may the FEC "institute a civil action for relief, including a permanent or temporary injunction, restraining order, or any other appropriate order." 2 U.S.C. § 437g(a)(6).

█ The express intent of these procedures is to guide the FEC in its role as the "exclusive" administrator and enforcer of the Act. *See In re Carter-Mondale Reelection Committee, Inc.,* 642 F.2d 538, 543 & n. 6, 545 & n. 9 (D.C.Cir.1980); *In re Federal Election Campaign Election Act Litigation,* 474 F.Supp. 1051, 1053 (D.D.C.1979). And, while our circuit has noted in a similar context that FEC determinations which construe FECA "are entitled to great respect by the courts because of the extremely delicate nature of the tremendous power entrusted to it," [3] this broad grant of discretion also assumes that the FEC will "be sensitive to the great trust imposed on it to not overstep its authority by interfering unduly in the conduct of elections. The statute has its own penalties, procedures, remedies and time schedules and these should be observed." [4] Accordingly, where the FEC fails or has not been afforded an opportunity to comply with the mandatory prerequisites to suit, an enforcement suit is

premature,[5] and the court, at a minimum, must stay the action pending cure by the FEC, or in certain cases dismiss the suit for want of subject matter jurisdiction.[6]

## II. DISCUSSION

### A. *Introduction*

By their motion to dismiss, defendants contend first that the FEC failed to affirmatively find probable cause, attempt conciliation, or vote to initiate this action with respect to the charges raised in paragraphs 13, 15, 18 and 22 through 36 of the Complaint, and that said failures are jurisdictional defects requiring the dismissal of these charges. Second, defendants contend that the entire suit must be dismissed, in any event, because with respect to those paragraphs in the Complaint over which the FEC found probable cause, and voted to initiate suit, its efforts to informally engage in conciliation and reconcile any differences of opinion with defendants were statutorily deficient.

The FEC concedes it failed to specifically refer to the facts supporting the violations of law alleged in paragraphs 13, 15, 18, and 22 through 36 of the Complaint in its determination of probable cause or conciliation efforts. It asserts that the omission was harmless, however, for two reasons: (1) because the charges were part and parcel of, and similar in nature to, the other allegations in the Complaint; and (2) because the defendants do not deny the factual occurrence of the acts, but simply that the alleged activities were not unlawful and do not form the basis of a violation under FECA.[7] The FEC further contends that it

---

**3.** *In Re Carter-Mondale Reelection Committee, Inc.,* 642 F.2d at 544 (the court dismissed a suit brought by a private litigant prior to the exercise of pre-suit procedures by the FEC).

**4.** 642 F.2d at 545.

**5.** *See id.* at 543; *Gabauer v. Woodcock,* 594 F.2d 662, 673 (8th Cir.1979).

**6.** *See E.E.O.C. v. Sears, Roebuck & Co.,* 650 F.2d 14, 19 (2d Cir.1980); *E.E.O.C. v. Klinger Electric Corp.,* 636 F.2d 104, 107 (5th Cir.1981) (per curiam); *E.E.O.C. v. Zia Co.,* 582 F.2d 527,

530–33 (10th Cir.1978); *Patterson v. American Tobacco Co.,* 535 F.2d 257, 271–72 (4th Cir. 1976); *E.E.O.C. v. Raymond Metal Products Co.,* 530 F.2d 590, 596 (4th Cir.1975); *Brennan v. Ace Hardware Corp.,* 495 F.2d 368, 374–76 (8th Cir.1974).

**7.** The FEC notes that it would have been impossible to find probable cause, conciliate, and vote to initiate suit with respect to the allegations in paragraphs 23–36 of the Complaint because they involved continuing violations by the defendants of the unlawful activity alleged in paragraphs 13, 15, 18 and 22.

properly complied with all of the prerequisites to suit under the Act, with respect to the other paragraphs in the Complaint, and that the only reason the parties were unwilling to resolve their differences informally was the intransigence of the defendants.

B. *The Administrative Proceedings Below*

Before addressing the two challenges raised by defendants, a brief review of the allegations in the Complaint and a review of the procedural background of the case is in order. In Count I, the FEC alleges that the NRA and the NRA–ILF made "expenditures totalling $37,126.05 in connection with the general and primary elections of 1978 and 1980" in violation of 2 U.S.C. § 441b(a). *See* Complaint, ¶¶ 12–37. In Count II, the FEC alleges that the NRA–PVF received advances or contributions from the NRA and NRA–ILF in the amount of $37,126.05 in violation of 2 U.S.C. § 441b(a). The FEC seeks a declaration that the alleged activity was unlawful, a permanent injunction prohibiting defendants from engaging in the alleged activity in the future and the imposition of civil penalties on the defendants.

As a result of its internal review of reports filed by the NRA–PVF, the FEC sent a form letter on May 16, 1979, requesting the NRA–PVF to supply further information in connection with its February, 1979 report to the FEC. Affidavit of Kenneth A. Gross, Plaintiff's Exhibit 1, ¶ 4; Plaintiff's Exhibit 5. Specifically, the NRA–PVF was asked to explain in detail the independent expenditures reported on Schedule E, Line 23. *Id.* On May 31, 1979, James J. Featherstone, as Treasurer of the NRA–PVF, responded. Plaintiff's Exhibit 6. The letter described numerous expenditures made in connection with the election or defeat of several federal candidates, and included a description of some of the expenditures (at page 4) covered by the allegations in paragraph 13, 15, 18 and 22 of the Complaint. At this point in time, however, the FEC concedes that it had not yet begun an investigation pursuant to 2 U.S.C. § 437g, but was simply engaged in a routine review of FEC reports pursuant to 2 U.S.C. §§ 432–34. Affidavit of Kenneth A. Gross, Plaintiff's Exhibit 1, ¶ 4.

It was not until February 27, 1980, that the FEC found by a vote of 6–0 that it had "reason to believe" the defendants in this suit had violated the Act. *In the Matter of National Rifle Association Political Victory Fund, et al.,* MUR 1110 (Feb. 27, 1980), Plaintiff's Exhibit 7. On March 7, 1980, in accordance with 2 U.S.C. § 437g(a)(2), the FEC sent the NRA–PVF notice of its finding and a copy of a Staff Memorandum describing the factual and legal basis for the finding. Plaintiff's Exhibits 7, 8, and 8A. The cover letter advised the NRA–PVF of its right to submit any factual or legal materials relevant to the finding and noted that:

> In the absence of any information which demonstrates that no further action should be taken against your committee, the Commission may find probable cause to believe that a violation has occurred, and proceed with formal conciliation. Of course, this does not preclude the settlement of this matter through informal conciliation prior to a finding of probable cause to believe if you so desire . . . .

and

> If you have any questions, please contact Judy Thedford at (202) 503–5071.

Plaintiff's Exhibit 8.[8] The Staff Memorandum cited two groups of independent expenditures in the amounts of $1932.75 and $3815.00 which were paid to NRA–ILF to pay for "travel to disseminate communications," "the printing of post cards" and "to assist a campaign." Plaintiff's Exhibit 8A.

The NRA–PVF responded on March 28, 1980, with a detailed letter describing the nature of each payment comprising the respective expenditure totals referred to in the Staff Memorandum, including the check number, amount, date, and purpose of the

---

8. A similar letter and Staff Memorandum were also sent to the NRA–ILF on March 5, 1980, advising it of the FEC's finding of reason to believe that the NRA–ILF may have violated 2 U.S.C. § 441b. Defendants' Exhibits H and I.

expenditure. Plaintiff's Exhibit 9. Each expenditure involved the reimbursement of the NRA–ILF by the NRA–PVF for expenses which the NRA–PVF charged to the Beeson Travel Agency, and in one instance to National Creative Printing on NRA–ILF's account (hereinafter collectively referred to as the "Beeson Expenditures").[9] *Id.;* Affidavit of James J. Featherstone ("Featherstone Affidavit") at page 5.

As of March 28, 1980, and as James J. Featherstone both testified and attested to in his affidavit, neither he nor the defendants had any indication from the FEC that the scope of the investigation included any possible violations other than those encompassed by the $1932.75 and $3815.00 figures referred to by the FEC and explained by him in his March 28, 1980 letter. *Id.* at 4–5. The Court agrees with the defendants that it would be reasonable to conclude that those matters which came up prior to the initiation of the investigation and were not encompassed by the finding of reason to believe had been dropped, or at most were undergoing further study.

On June 16, 1980, the FEC General Counsel advised the defendants of its decision to "recommend that the Commission find probable cause to believe that a violation had occurred," Plaintiff's Exhibit 10, and enclosed a copy of its brief to the FEC, to which the defendants had 15 days to respond under 2 U.S.C. § 437g(a)(3). The brief, as required, set forth the legal and factual basis for the finding, but was limited in scope, as was the finding of reason to believe, to the Beeson Expenditures.[10] Plaintiff's Exhibit 10A, at 2–3. The FEC

concedes that the "brief did not detail the specific facts that are alleged in paragraphs 13, 15, 18, and 22–36 of the Complaint" (i.e., the alleged non-Beeson violations). Affidavit of Kenneth A. Gross, Plaintiff's Exhibit 1, ¶ 6.[11] Thereafter, on August 13, 1980, the defendants filed a response as provided for in the Act contending that the reimbursements by the NRA–PVF of expenses charged for travel in NRA–ILF's name were not violations of the Act. Plaintiff's Exhibit 11. The response addressed the legal question of whether the alleged acts were violations of law and the factual question of whether the acts alleged were more than a *de mimimus* infraction.[12] *Id.* Nowhere in the response does it appear that any violations, other than the Beeson Expenditures, were at issue.

Finally, on September 23, 1980, the FEC voted 4–2 to find probable cause that the NRA–ILF and NRA–PVF violated the Act and that a civil penalty of $100 be imposed on each. Plaintiff's Exhibit 13. The record before the FEC consisted of the General Counsel's brief, and the defendants' response, and the FEC conceded at oral argument that the non-Beeson allegations and facts were not explicitly presented to the Commission.

In accordance with 2 U.S.C. § 437g(a)(4), on October 1, 1980, the FEC notified the defendants of the decision and proffered a conciliation agreement under which the defendants would admit to the alleged violations of the Act in connection with the Beeson Expenditures and agree to pay a $100.00 civil penalty. Plaintiff's Exhibits

---

**9.** Of the 16 payments listed, one involved a payment to National Creative Printing for the printing of post cards and the other 15 involved the payment of travel expenses to the Beeson Travel Agency.

**10.** The sole non-travel expenditure to National Creative Printing for the printing of post cards was dropped from the investigation because the NRA–PVF reimbursed the NRA–ILF on the day following its payment to the printer. Plaintiff's Exhibit 10A, at 3- 4.

**11.** The FEC also admits that the omission of the detailed facts supporting paragraphs 13, 15, 18 and 22 of the Complaint was "inadvertent

and unintentional," and that the omission of the detailed facts supporting paragraphs 23–36 "were not included in the brief because as of June 13, 1980, the date the brief was approved in final and signed by the General Counsel, the acts alleged in paragraphs 23–36 either had not yet occurred or had not yet been disclosed in reports filed by the NRA–PVF." *Id.*

**12.** The defendants attached an independent auditor's review of the record to support the claim that the advances by way of the use of a charge account had a *de minimus* financial effect. Plaintiff's Exhibit 12.

14 and 14A. The cover letter advised the defendants of the FEC's duty to attempt to correct the violations by informal means for a period of 30–90 days. *Id.* The defendants replied by letter dated October 7, 1980, that it still believed no violation had occurred, that it could not admit to a violation, and that it was prepared to defend its position in court. Plaintiff's Exhibit 15. The FEC sent the defendants a revised conciliation agreement on January 22, 1981. Plaintiff's Exhibits 16 and 17. The revised agreement was intended to satisfy the defendants' objections by: (1) including language stating that the defendants had altered their billing practices; and (2) replacing the admission of the violation with a statement that the FEC has alleged the violations occurred and in the interest of settlement and avoidance of litigation the defendants would not contest the allegations. *Id.* Again, there is no evidence that any charges emanating from other than the Beeson Expenditures were raised or considered. On January 28, 1981, the defendants again rejected the offer and stated that it viewed the agreement as one "couched in *nolo contendere* terms," and thus, tantamount to an admission. Plaintiff's Exhibit 18. The defendants then requested that the FEC reconsider its August 13, 1980 reply brief and recognize that its allegations were both *de minimus* in nature and raised substantial legal and constitutional questions. *Id.* The defendants made no counter offer in writing, nor did they call the FEC staff to discuss the matter as requested in both of the Commission's cover letters. Affidavit of Kenneth A. Gross, Plaintiff's Exhibit 1, ¶¶ 8, 9.

By letter dated March 23, 1981, the FEC General Counsel informed the defendants of the FEC's March 17, 1981 decision, by a vote of 4–1, to file suit as a result of the staff's inability to settle the matter through conciliation. Plaintiff's Exhibits 19 and 20. The letter invited the defendants to contact Gary Johansen should they have any questions or wish to settle the matter prior to suit. *Id.* It is not disputed, and the FEC conceded at oral argument that only the Beeson Expenditures were before the FEC when it voted to initiate legal action. On April 8, 1981, Mr. Featherstone, on behalf of defendants, responded that he did not believe they violated the Act and cannot admit a violation, that it is undisputed that defendants have changed their bookkeeping system and now issue separate checks in payment of bills, and that while settlement would be desirable, "I am, however, unable to perceive that there is a case or controversy to settle." Defendants' Exhibit T. The present suit, including the Beeson and non-Beeson allegations, was filed on May 26, 1981.[13]

## C. *The Non-Beeson Allegations*

The defendants contend that this Court is without subject matter jurisdiction under 2 U.S.C. § 437g(a)(6) to entertain suit on the allegations raised in paragraphs 13, 15, 18 and 22–36 of the Complaint filed herein, as a result of the FEC's failure to investigate, provide notice of probable cause, conciliate, or even vote to initiate this suit with respect to these allegations. In support of this argument, defendants explain that the factual and legal basis of the violations alleged in these paragraphs are not related to the Beeson Expenditures, which alone were the subject of the FEC's investigation, conciliation, and vote, and thus the statutory prerequisites to suit with respect to these charges remain unfulfilled. The defendants note that the violations alleged in these paragraphs concern the arms-length purchase of goods and services by the NRA–PVF from the NRA and the NRA–ILF, and do not, like the Beeson Expenditures, involve the use of the NRA–ILF's charge accounts by the NRA–PVF.

The FEC responds that the defendants were aware that the investigation included these allegations, but concedes, as noted above, that it "inadvertently and unintentionally" left the factual and legal support

---

**13.** The parties have discussed settlement on at least one occasion, *see* Plaintiff's Exhibit 21, but appear to continue to be unable to agree on the appropriate language for a settlement agreement or consent decree.

for these allegations out of its brief in support of probable cause. The FEC also claims that it could not have investigated, provided notice, or conciliated the allegations raised in paragraphs 23–36 of the Complaint because they were continuing violations of the allegations raised in paragraphs 13, 15, 18 and 22.[14] The FEC, as noted in the November 15, 1982 Memorandum Opinion, relies on its contentions that the allegations were "part and parcel" of the Beeson Expenditures to which the defendants have only raised legal, not factual defenses, and that there is no prejudice to the defendants because they have been afforded notice and an opportunity to settle since the filing of suit and that the Court could avoid a waste of judicial resources, a second lawsuit, by staying the present action pending a complete investigation of these allegations under 2 U.S.C. § 437g(a).

The defendants respond that they are prejudiced by the FEC's failure to follow the statutory prerequisites to suit with respect to these charges. They note that if they had been presented with the entire set of charges, they may have acted differently during conciliation, and that it is even more of a waste of judicial resources for the Court to hear a suit on issues which have not been subjected to the full panoply of presuit procedures enacted by Congress.

As noted above, and as more fully discussed in the Court's November 18, 1982

Memorandum Opinion and Order, this Court is convinced that the statutory prerequisites to suit play an essential role in the resolution of FEC violations.[15] Congress expressly provided that the statutorily prescribed notice of charges, the "reason to believe" finding and subsequent General Counsel brief to the FEC set forth the "factual" and "legal" basis for the allegations. 2 U.S.C. § 437g(a)(1), (2), (3).[16] On the basis of the record before it, as described above, it is clear that the FEC did not include any of the detailed facts supporting the allegations in paragraphs 13, 15, 18, and 22–36 in its notice to the defendants or in the General Counsel's brief, and defendants' responses, which discuss only the Beeson Expenditures, corroborate this fact. Moreover, the failure to include these charges eliminated any possibility of ensuring the defendants a fair opportunity to demonstrate that no action should be taken or otherwise respond to the FEC's charges.[17] *Id.*

As a result of these defects, the defendants were also denied an opportunity to informally conciliate these allegations. Notably, the FEC introduced no evidence to the contrary, i.e., that at the time conciliation took place the defendants were aware of these allegations. The conciliation agreements themselves only referred to the Beeson Expenditures. The FEC merely concludes by way of argument that the charges were part and parcel of the Beeson

---

**14.** *See* discussion, *supra*, at page 1335.

**15.** Memorandum Opinion and Order, *supra*, at 1333–1334 & n. 5.

**16.** In the House Report to the 1979 amendments to FECA, which simplified and reorganized the enforcement procedures of the Act, the Committee explained:

The purpose of this [initial] notice is to inform the respondent that a complaint has been filed of the basic charges against him or her ....

H.Rep. No. 96–422, 96th Cong., 1st Sess. at 20 (1979), U.S.Code Cong. & Admin.News 1979, pp. 2860, 2880. Senator Hatfield later explained on the floor:

A number of other provisions deserve comment. There are substantial modifications of the enforcement process. A respondent is given additional protections by requiring that

he or she be given a more detailed notice of any charges, as well as an opportunity to formally respond to charges prior to any determination by the Commission that he or she violated the Act.

125 Cong.Rec. S 19099 (Dec. 18, 1979).

**17.** The FEC claims that its inquiry, regarding the NRA–PVF's February 1979 independent expenditure report, prior to the initiation of the investigation, which elicited a response by defendants, by letter dated May 31, 1979 (Plaintiff's Exhibit 6), which, in part, described the details of several of the alleged violations in paragraphs 13, 15, 18 and 22 of the Complaint, was sufficient to put the defendants on notice of these charges. If the Court were to adopt this view, then the FEC would be able to circumvent the express notice requirements of the Act.

Expenditures allegations and that the conciliation efforts made with respect to those allegations were sufficient to comply with 2 U.S.C. § 437g(a)(4). This Court disagrees.

Finally, and the Court views this as fatal to the FEC's position, the FEC concedes that when it voted to initiate this action under 2 U.S.C. § 437g(a)(6), the Commissioners had no papers before them describing, nor were they aware of, the alleged non-Beeson violations. Thus, the FEC has not yet voted to initiate an action with respect to paragraphs 13, 15, 18 and 22–36 of the Complaint.

In light of the foregoing, the Court finds it is unnecessary to consider whether the FEC is entitled to a stay pending cure of the pre-suit defects. Unlike the cases discussed in the November 18, 1982 Memorandum, which found it was permissible under Title VII of the Civil Rights Act (42 U.S.C. § 2000e–5(b)) and the Age Discrimination and Employment Act of 1967 (29 U.S.C. § 626(b))—statutes which have similar pre-suit notice, investigation and conciliation procedures, defendants do not merely claim that notice of the claim was defective or untimely or that conciliation was inadequate, but rather a total failure on the part of the FEC to comply with the statutory prerequisite to suit with respect to these allegations. In addition, without an affirmative vote of four members of the Commission to initiate suit with respect to these allegations, a critical check and internal review of the FEC administrative process is obviated.

■ Therefore, given the unusual circumstances of this case, this Court holds that it is without subject matter jurisdiction to hear the allegations raised in paragraphs 13, 15, 18 and 22–36 of the Complaint and that such allegations be dismissed without prejudice.[18]

18. The FEC's argument that the allegations in paragraphs 23–36 of the Complaint could not have been subjected to pre-suit procedures because they involved continuing violations is without merit in this case. The FEC has clear and explicit authority to initiate suit to prevent violations which are about to occur, 2 U.S.C. § 437g(a)(6), however, this authority assumes

## D. *The Beeson Expenditures Allegations*

■ The defendants next contend that the remaining allegations in the Complaint which concern the Beeson Expenditures should also be dismissed on the grounds that the conciliation efforts on the part of the FEC were inadequate. The defendants concede, as the Court agrees they must, that the notice, reason to believe, and probable cause determinations complied with the letter and spirit of the FECA. The gravamen of their assertions is that the FEC has an affirmative duty to do more than mail two conciliation offers to the defendants, prior to recommending suit. The Court disagrees.

The Act explicitly requires, and the legislative history demands that the FEC devote its resources to engage in "informal methods of conference, conciliation and persuasion." Only if the FEC is unable to resolve, correct, or otherwise prevent the alleged violations—violations which the FEC has found probable cause to believe occurred—is it authorized to file suit to enforce the Act and seek relief. Memorandum Opinion and Order, *infra*, at 1342–1343 & n. 5, 1344–1345; see *In re Carter-Mondale Reelection Committee, Inc., supra,* 642 F.2d at 543; *Gabauer v. Woodcock, supra,* 594 F.2d at 673. In the November 18, 1982 Memorandum and Opinion (at page 1345), this Court explained:

Because voluntary conciliation is the preferred method of dispute resolution under FECA, it is essential that the Court take a hard look at the FEC's efforts to notify the defendants of the charges and the FEC's attempts to conciliate with them. The defendants must have a fair opportunity to review and respond to the FEC's findings and have notice of precisely what activities have been found to

that the FEC has found probable cause to believe a violation *is about to occur* and has affirmatively voted to initiate suit to enjoin these actions. Here there has been no finding of reason to believe, probable cause, or decision to file suit that these alleged violations were about to occur.

be violations of the Act. Without such notice, the defendants are unable to adequately assess their situation and determine whether conciliation is in their best interest. Furthermore, assuming there is adequate notice of the charges, there must be a good faith, affirmative attempt to conciliate every allegation included in the judicial complaint.

At the same time, the FEC is not bound to accept a conciliation agreement which it finds unacceptable or inconsistent with the fair administration of the Act. Congress delegated exclusive enforcement to the FEC because it found expert, uniform enforcement essential to the administration of FECA. Where the FEC acts in good faith and reasonably responds to the position of a defendant during conciliation, it satisfies its obligation to attempt conciliation. Where, for example, a defendant repeatedly refuses to negotiate, concede culpability, or respond to the FEC's conciliation attempts, it is not improper for the FEC to suspend conciliation efforts and file suit. Finally, even where the FEC may be found to have inadequately performed or omitted one or more of its notice or conciliation obligations, such error may be excused where the act or omission was not intentional and where it caused no harm or prejudice to the defendants with respect to their participation in the pre-suit and conciliation process. (Footnotes and citations omitted.)

Here the FEC provided the defendants with notice of the investigation and the alleged violations involving the Beeson Expenditures, including a full description of the factual and legal basis for the allegations (*see* Plaintiff's Exhibits 7, 8, 8A, 10, and 10A), and the defendants, as evidenced by their well briefed August 13, 1980 reply to the General Counsel's brief (Plaintiff's Exhibit 11), received and had a fair opportunity to review and respond to the FEC's findings. The FEC advised the defendants on October 1, 1980 by letter (Plaintiff's Exhibit 14) of the probable cause determi-

nation, its duty to conciliate, and an FEC staff person to call to discuss an enclosed conciliation agreement. The defendants' Treasurer did not submit a counter offer or request a meeting to discuss the matters further, but, in relevant part, wrote in response:

My letter of August 13, 1980, set forth my reasons for believing that no violation of Section 441b(a) has occurred. It contained, in my view, a sufficient basis for a decision by you to take no further action. No purpose would be served by repeating those reasons in this communication.

This Association is unable to enter into the conciliation agreement which you enclosed with your letter since it would require that the NRA admit to having violated 2 USC 441b(a). *Since I do not believe that NRA has committed a violation of that section, such an admission would be a disservice to our 1.8 million members. I am constrained, therefore, to advise you that we are prepared to defend our position should the Commission vote to continue this matter pursuant to the provisions of 2 USC 437g(a)(6)(A).* (Emphasis added.)

Plaintiff's Exhibit 15. The FEC did not immediately vote to initiate suit, but directed the General Counsel to continue its attempt to settle the matter, Plaintiff's Exhibit 17, and a second conciliation agreement was proffered in an attempt to satisfy the defendants' concerns.[19] Again, the FEC asked the defendants to call if they had any questions or suggestions. *Id.* In response, the defendants again failed to make any suggestions, or request further discussions, but responded, in relevant part, as follows:

As I advised in my letter of October 7, 1980, the NRA was unable to enter into the conciliation agreement forwarded with your letter of October 1, 1980, since it required that the NRA admit a violation of 2 USC 441b(a). The revised conciliation agreement suffers from the same defect, although the admission is couched in *nolo contendere* terms. The

---

**19.** *See* discussion, *supra,* at pages 1335–1336.

payment of a civil penalty would, of course, also constitute an admission of a violation. As I have previously advised, I do not believe that the NRA has committed a violation of 2 USC 441b(a).

Although I appreciate your modifying your position somewhat, I would like to renew my suggestion that my letter of August 13, 1980, contained a sufficient basis for a decision by the Commission to take no further action in this matter. I believe that it would be in order for you to recommend such a disposition to the Commission based on the record in this case viewed in the light of your recommendations in comparable cases, as well as the Commission's decisions in such cases. This is especially so since the violation alleged is *de minimis* [sic] and the legal and constitutional questions are substantial.

Based on the foregoing, this Court finds that the FEC has acted in good faith, and that its initiation of suit with respect to the Beeson Expenditures is a reasonable response to the position articulated by defendants. Here the defendant did not express a willingness to negotiate, but repeatedly refused to concede liability and respond on the merits to the FEC's proposals.[20]

Accordingly, the Court holds that it has subject matter jurisdiction to hear those allegations concerning the Beeson Expenditures.

## ORDER

In accordance with the foregoing opinion, the arguments of counsel and the record in this case, it is this 6th day of January, 1983, hereby

ORDERED that defendants' motion to dismiss is granted in part and denied in part. The allegations in paragraphs 13, 15, 18 and 22–36 of the Complaint are hereby dismissed without prejudice; and it is

FURTHER ORDERED that all non-dispositive and discovery motions are hereby referred to Magistrate Dwyer; and it is

FURTHER ORDERED that counsel shall appear before the Court at 9:30 a.m. on January 17, 1983, to discuss a schedule for discovery, the filing of dispositive motions, pretrial conference, and trial.

## APPENDIX

### MEMORANDUM OPINION AND ORDER

November 18, 1982

#### I. *Introduction*

This case is before the court on a motion to dismiss by defendants[1] under Rule 12(b)(1) for lack of subject matter jurisdiction. The underlying complaint alleges that the defendants either received or expended funds in violation of the Federal Election Campaign Act, as amended ("FECA" or the "Act"), 2 U.S.C. §§ 431–455. The Federal Election Commission ("FEC") requests declaratory and injunctive relief and the imposition of a civil penalty for the purpose of redressing the alleged violations and prohibiting future violations.

Defendants request dismissal on the ground that the FEC failed to adequately notify Defendants of its determination of probable cause or thereafter attempt to conciliate the charges listed in paragraphs 13, 15, 18, and 22 through and including 36 of the Complaint pursuant to 2 U.S.C. § 437g(a)(4), and that as a result, the Court

---

**20.** In this regard, the Court notes that there is nothing wrong with the defendants' decision to refuse to concede culpability or negotiate an admission where the defendants believe they have acted lawfully. By doing so, however, they waive their defense of inadequate conciliation and should reasonably expect the agency to file suit. This is because under FECA, the FEC is not the final arbiter, but merely the vehicle chosen by Congress for conducting an investigation, finding *probable cause,* and conducting informal conciliation prior to *de novo* review by the Court.

**1.** The defendants are the National Rifle Association of America ("NRA"), the National Rifle Association Institute for Legislative Action ("NRA–ILF"), and the National Rifle Association Political Victory Fund ("NRA–PVF").

is without subject matter jurisdiction to hear this case. At a minimum, the Defendants contend the Court is without subject matter jurisdiction to hear those specific allegations.[2]

Plaintiff opposes the motion on several grounds. First, plaintiff contends that its allegations in its Complaint state a claim in accordance with the requirements of the FECA and that they must be accepted as true for the purpose of this motion.[3] Second, plaintiff responds that it fully complied, as a matter of fact, with the procedural prerequisites to a FECA enforcement suit, and third, that even if it failed to comply with certain statutory prerequisites, that the error is non-jurisdictional and the Court has discretion to stay the action pending remedial action by the FEC.

In accordance with the opinion which follows, this Court finds that it is presently unable to determine from the record: (1) whether the FEC has adequately performed its statutory duties; and (2) whether the Court has subject matter jurisdiction to hear this suit. For these reasons, the Court is issuing an Order simultaneously herewith directing the parties to submit affidavits and evidence, and/or offer testimony at an evidentiary hearing, on the issue of whether the FEC fulfilled its duty to notify the defendants of all of the alleged violations as well as actively conciliate such issues. In addition, the Order also directs the parties, in accordance with this opinion, to file supplemental legal briefs addressing the question of whether, assuming *arguendo* the FEC failed to adequately notify defendants and attempt conciliation, such failure deprives this court of subject matter jurisdiction or merely requires the court to stay the case pending remedial action by the FEC.

## II. *Discussion*

### A. Enforcement of the Federal Election Campaign Act

Section 437g(a) of Title 2 of the U.S.Code provides, in relevant part, that:

(2) If the Commission ... on the basis of information ascertained in the normal

---

2. Defendants further allege in a supplemental motion to dismiss that the Court also lacks jurisdiction because conciliation efforts continued beyond the 90-day period prescribed in the statute. While 2 U.S.C. § 437g(a)(4) provides that attempts to conciliate by informal methods "may continue for a period of not more than 90 days," there is nothing in the Act or the legislative history which shows that this restriction is intended to benefit a person under investigation by the FEC. Moreover, because there is no restriction in the statute as to the time in which the FEC may file suit, the Court would be in the anomalous position, if it adopts defendants' view, of being unable to permit or accept the results of a settlement or conciliation agreement which is negotiated and finalized more than 90 days after the FEC's finding of probable cause. Given the strong Congressional intent to encourage settlement short of litigation, *see* H.Rep. No. 94-917, 94th Cong. 2d Sess. 4 (1976); H.Conf.Rep. 94-1057, 94th Cong. 2d Sess. 45, 47 (1976), U.S.Code Cong. & Admin.News 1976, p. 929, it would not make sense for Congress to have revoked the FEC's authority to settle after expiration of the 90-day period. And, although there appears to be no discussion in the legislative history of the 1979 FECA amendments which added the 90-day restriction, the most likely purpose of the 90-day restriction was to protect the FEC from being forced to engage in "mandatory" conciliation after 90 days expire, particularly where

conciliation is unlikely to be successful or where a defendant is using the process to avoid suit.

Even assuming the failure to complete conciliation in 90 days is a statutory violation, it is not one which in any way prejudices the defendants. The error, if it had any effect at all, afforded the defendants an additional opportunity to settle their differences with the FEC. In circumstances such as this, courts have consistently found, absent prejudice to the defendant, that the failure of an administrative agency to adhere to a statutory deadline is harmless error. *Cf. E.E.O.C. v. Airguide Corp.,* 539 F.2d 1038, 1041-42 (5th Cir.1976); *E.E.O.C. v. Raymond Metal Products Co.,* 530 F.2d 590, 596 (4th Cir.1976); *E.E.O.C. v. Kimberly-Clark Corp.,* 511 F.2d 1352, 1360 (6th Cir.1975), *cert. denied,* 423 U.S. 994, 96 S.Ct. 420, 46 L.Ed.2d 368 (1975). Thus, it would be improper to dismiss this suit on the foregoing alleged grounds.

3. In this connection plaintiff also contends that defendants' motion is untimely under F.R.C.P. 12(b) because it was filed over two months after the answer was filed. This contention is without merit. F.R.C.P. 12(h)(3) explicitly provides that a motion or suggestion questioning the court's subject matter jurisdiction may be raised at any time. *See* 5 Wright & Miller, Fed.Prac. & Proc. § 1350 (1969).

course of carrying out its supervisory responsibilities, determines, by an affirmative vote of its members, that it has *reason to believe* that a person has committed ... a violation of this Act ..., the Commission shall ... notify the person of the alleged violation. *Such notification shall set forth the factual basis for such alleged violation.* The Commission shall make an investigation of such alleged violation ....

(3) The general counsel of the Commission shall notify the respondent of any recommendation to the Commission by the general counsel to proceed with a vote on probable cause pursuant to paragraph (4)(A)(i). With such notification, the general counsel *shall include a brief stating the position of the general counsel on the legal and factual issues of the case.* Within 15 days of receipt of such brief, respondent may submit a brief stating the position of such respondent on the legal and factual issues of the case, and replying to the brief of general counsel. Such briefs shall be filed with the Secretary of the Commission and shall be considered by the Commission before proceeding under paragraph (4).

(4)(A)(i) ... if the Commission determines, by an affirmative vote of its members, *that there is probable cause to believe* that any person has committed ... a violation of the Act ..., *the Commission shall attempt for a period of at least 30 days, to correct or prevent such violation by informal methods of conference, conciliation, and persuasion, and to enter into a conciliation agreement with any person involved.* Such attempt by the Commission to correct or prevent such violation may continue for a period of not more than 90 days. The Commission may not enter into a conciliation agreement under this clause except pursuant to an affirmative vote of 4 of its members. A conciliation agreement, unless violated, is a complete bar to any further action by the Commission, including the bringing of a civil proceeding under paragraph (6)(A)....

(6)(A) *If the Commission is unable to correct or prevent any violation of this Act ..., by the methods specified in paragraph (4)(A), the Commission may, upon an affirmative vote of 4 of its members, institute a civil action for relief,* including a permanent or temporary injunction, restraining order, *or any other appropriate order* (including an order for a civil penalty ...) in the district court of the United States for the district in which the person against whom such action is brought is found, resides, or transacts business .... (Emphasis added.)

This provision, on its face, lays out an arguably straightforward procedure for correcting or preventing violations of FECA. First, it assigns the resolution of enforcement to the primary jurisdiction of the FEC.[4] This broad grant of enforcement authority gives the agency a presumption of correctness in determining, within the bounds of the statute, the optimal path to follow in enforcing or correcting violations of FECA.

Second, Section 437g clearly directs the FEC to undertake the four following steps before filing suit:

(1) determine that reasonable cause exists and provide notice and an opportunity to comment to the respondent;

(2) investigate the allegations;

(3) determine that probable cause exists after receiving a brief from the general counsel and a response from the alleged violator; and

(4) attempt for at least 30 days to correct the alleged violations by informal means of "conference, conciliation, and persuasion."

The conciliation requirement was singled out by Congress to be the preferable means

---

4. Congress determined in its 1976 amendments to the Act that it was necessary to establish an expert, non-partisan agency through which all enforcement activity would be channeled. H.Rep. No. 94–917, *supra*, at 4 (1976); 120 Cong.Rec. 35134 (1974) (remarks of Representative Hayes). *See In re Federal Election Campaign Act Litigation*, 474 F.Supp. 1051, 1053 (D.D.C.1979).

for correcting violations.[5] Only after the FEC has affirmatively exhausted these efforts and found that it is unable to reach a conciliation is the FEC authorized to file suit. Civil enforcement actions were intended by Congress to be the alternative of last resort.

B. *Defendants' Motion to Dismiss—The Present Controversy*

Defendants contend that this Court is without subject matter jurisdiction to hear this case because the FEC failed to properly notify it and actively engage in conciliation of each of the allegations made in paragraphs 13, 15, 18, and 22–36 of the Complaint. Plaintiff responds that it has fully complied with the procedural requirements to suit under 2 U.S.C. § 437g, and that because it has alleged full compliance in the Complaint (*see* paragraphs 9 through 11), that the Court, on a F.R.C.P. 12(b)(1) motion, must accept the plaintiff's allegations as true for the purpose of determining subject matter jurisdiction. In support of its position plaintiff relies on *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). *Warth v. Seldin,* however, involved a motion to dismiss for want to standing, not subject matter jurisdiction. *Id.* at 501, 95 S.Ct. at 2206. Even if the circumstances are analogous, the decision does not support plaintiff's case. The Supreme Court noted that while the "trial and reviewing courts must accept as true all material allegations of the complaint," the trial court is *also* empowered "to require plaintiff to supply, by amendment to the complaint or by affidavit, further particularized allegations of

fact deemed supportive of plaintiff's standing." *Id.* Similarly, in this case the Court may require the plaintiff to submit further factual materials in support of jurisdiction.

It is well settled that a district court is both empowered and required to inquire into the basis of its subject matter jurisdiction at any stage of the proceedings.[6] The nature of the inquiry varies depending on whether defendants merely attack the pleadings on their face, before an answer has been filed, or thereafter challenge the factual basis for jurisdiction.[7] In *Menchaca,* the Fifth Circuit explained:

A "facial attack" on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of this motion. *Mortensen v. First Federal Savings & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977). A "factual attack," however, challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered. *Id.* Moreover, a "factual attack" under Rule 12(b)(1) may occur at any stage of the proceedings, and plaintiff bears the burden of proof that jurisdiction does in fact exist. *Id.* at 891–92.

613 F.2d at 511.

Defendants' motion to dismiss was filed after the answer in this case, and challenges the factual basis of the plaintiff's allegations by asserting that plaintiff failed to

---

**5.** Rep. Brademas stated when the 1976 amendments were reported from Conference that:

It is also the view of the conferees that the Commission should seek to effect voluntary compliance through informal administrative procedures before it initiates any civil enforcement actions.

120 Cong.Rec. 35132 (1974). The House Conference Report also provides:

[The FEC] is required to make every endeavor to correct or prevent the violation by informal methods prior to instituting any civil action.

H.Conf.Rep. No. 94–1057, 94th Cong., 2d Sess. 45 (1976); *see* H.Rep. No. 94–917, *supra,* at 4, 63; S.Rep. No. 64–677, 94th Cong., 2d Sess.

7–8 (1976), U.S.Code Cong. & Admin.News 1976, pp. 935, 961.

**6.** *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.1980), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980). *See* 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3522 (1975).

**7.** *Williamson v. Tucker,* 645 F.2d 404, 412–13 (5th Cir.1981) (on rehearing); *Menchaca v. Chrysler Credit Corp.,* 613 F.2d at 511; *Mortensen v. First Federal Savings & Loan Ass'n,* 549 F.2d 884, 891–92 (3rd Cir.1977); *Airline Pilots Ass'n Intern. v. Northwest Airlines, Inc.,* 444 F.Supp. 1138, 1142 (D.C.D.C.1978).

comply with the jurisdictional prerequisites of FECA. *See Mortensen v. First Federal Savings & Loan Ass'n, supra,* 549 F.2d at 892 & n. 16. Accordingly, this Court finds that it is required to look behind the pleadings for the purpose of determining jurisdiction.

Defendants contend that the present action includes issues "which were not considered by the FEC in its determination of probable cause and which have not undergone attempted conciliation . . . ."[8] Plaintiff responds that the allegations in paragraphs 13, 15, 18, and 22 through 36 of the Complaint were "part and parcel" of the same violations alleged by the FEC in the other paragraphs of the Complaint, that Defendants received adequate notice of each charge, and that the FEC made a sufficient attempt to conciliate each of the charges in light of the defendants' repeated refusals to concede culpability or wrongdoing.[9] The Court has reviewed, in addition to the pleadings, the documents submitted as exhibits to the parties' pleadings and is unable to determine from the record before it, whether the FEC has complied with its statutory obligation to notify defendants of the scope of charges included in its determination of probable cause and whether its attempts to conciliate included all of the allegations raised in paragraphs 13, 15, 18, and 22 through 26 of the Complaint. It appears that the FEC may have limited its finding of probable cause and conciliation efforts to violations of FECA involving payments to the Beeson Travel Agency and one payment for the printing of postcards advocating the defeat of a federal candidate.[10] It is not clear from the record, however, whether these allegations encompass those alleged by the defendants to have been raised for the first time in the

Complaint. It is also not clear whether defendants reasonably responded to the FEC's conciliation attempts assuming there was adequate notice. Thus, the Court finds that it is necessary to hold a hearing, and receive affidavits and/or testimony on the question of whether the FEC complied with its duties under Section 437g. *See E.E.O.C. v. Airguide Corp.,* 539 F.2d 1038, 1040, 1042 (5th Cir.1976).

The scope of the FEC's responsibilities to investigate, find probable cause, notify the defendant of its alleged wrongdoings, and attempt to conciliate under FECA is one of first impression. In the interest of guiding the parties in addressing these questions, a brief overview of two relevant statutes is helpful.

Section 706 of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–5(b)) ("Title VII") and the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 626(b)) ("ADEA") contain analogous statutory prerequisites, with respect to the Equal Employment Opportunity Commission and the Department of Labor to those imposed on the FEC under Section 437g of FECA. In cases construing those statutes, several principles have emerged which the Court finds instructive.

A finding of probable or reasonable cause, notice thereof, and a good faith attempt to conciliate are express conditions on an agency's power to bring suit under these acts.[11] A total failure to comply with those pre-enforcement duties clearly warrants the dismissal of an enforcement action.[12]

Where, as here, some of the issues covered by a complaint were allegedly not raised or conciliated below, and the adequacy of

---

**8.** Points and Authorities in Support of Motion to Dismiss, at 2.

**9.** Federal Election Commission's Response in Opposition to Defendant's Motion to Dismiss, at 7.

**10.** *See* General Counsel's Brief, In the Matter of National Rifle Association Political Victory Fund, et al., MUR 1110 (May 5, 1980), attached as Exhibit 5 to Defendants' Answer.

**11.** *Patterson v. American Tobacco Co.,* 535 F.2d 257, 271–72 (4th Cir.1976); *E.E.O.C. v. Raymond Metal Products Co.,* 530 F.2d at 596 (4th Cir.1975); *Brennan v. Ace Hardware Corp.,* 495 F.2d 368, 374 -76 (8th Cir.1974).

**12.** *Id.*

the agency's compliance is challenged, as opposed to a total failure to comply, the question of dismissal becomes more complex.

Because voluntary conciliation is the preferred method of dispute resolution under FECA,[13] it is essential that the Court take a hard look at the FEC's efforts to notify the defendants of the charges and the FEC's attempts to conciliate with them.[14] The defendants must have a fair opportunity to review and respond to the FEC's findings and have notice of precisely what activities have been found to be violations of the Act.[15] Without such notice, the defendants are unable to adequately assess their situation and determine whether conciliation is in their best interest.[16] Furthermore, assuming there is adequate notice of the charges, there must be a good faith, affirmative attempt to conciliate every allegation included in the judicial complaint.[17]

At the same time, the FEC is not bound to accept a conciliation agreement which it finds unacceptable or inconsistent with the fair administration of the Act.[18] Congress delegated exclusive enforcement to the FEC because it found expert, uniform enforcement essential to the administration of FECA.[19] Where the FEC acts in good faith and reasonably responds to the position of a defendant during conciliation, it satisfies its obligation to attempt conciliation.[20] Where, for example, a defendant repeatedly refuses to negotiate, concede culpability, or respond to the FEC's conciliation attempts, it is not improper for the FEC to suspend conciliation efforts and file suit.[21] Finally, even where the FEC may be found to have inadequately performed or omitted one or more of its notice or conciliation obligations, such error may be excused where the act or omission was not intentional and where it caused no harm or prejudice to the defendants with respect to their participation in the pre-suit and conciliation process.[22]

Accordingly, the Court is unable, based on the record before it, to determine whether the FEC has exercised its statutory

13. *See* note 5, *supra,* and accompanying text.

14. *Cf. E.E.O.C. v. Kimberly-Clark Corp.,* 511 F.2d 1352, 1360–63 (6th Cir.1975), *cert. denied,* 423 U.S. 994, 96 S.Ct. 420, 46 L.Ed.2d 368 (1975); *Marshall v. Newburg R-2 School District,* 469 F.Supp. 1030, 1032-33 (E.D.Mo.1979).

15. *Cf. E.E.O.C. v. Sears, Roebuck & Co.,* 650 F.2d 14, 18–19 (2d Cir.1981); *E.E.O.C. v. Klinger Electric Corp.,* 636 F.2d 104, 107 (5th Cir. 1981) (per curiam); *E.E.O.C. v. Zia Co.,* 582 F.2d 527, 530–33 (10th Cir.1978); *Marshall v. Newburg R-2 School District,* 469 F.Supp. at 1032–33; *E.E.O.C. v. E.I. duPont de Nemours & Co.,* 373 F.Supp. 1321, 1336-38 (D.Del.1974), *affirmed,* 516 F.2d 1297 (3rd Cir.1975).

16. *See E.E.O.C. v. General Electric Co.,* 532 F.2d 359, 371 (4th Cir.1976); *Marshall v. American Motors Corp.,* 475 F.Supp. 875, 878–79 (E.D.Mich.1979); *Marshall v. Hartford Fire Ins. Co.,* 78 F.R.D. 97, 104 (D.Conn.1978); *E.E.O.C. v. Pierce & Stevens Chemical Corp.,* 434 F.Supp. 1162, 1166–67 (W.D.N.Y.1977).

17. *Cf. E.E.O.C. v. Sears, Roebuck & Co.,* 650 F.2d at 18–19; *E.E.O.C. v. Radiator Specialty Co.,* 610 F.2d 178, 183 (4th Cir.1979); *E.E.O.C. v. Zia Co.,* 582 F.2d at 532–33.

18. *Cf. E.E.O.C. v. California Teachers Ass'n,* 534 F.Supp. 209, 212–13 (N.D.Cal.1982). *See Marshall v. Sun Oil Co.,* 605 F.2d at 1335-37.

19. *Marshall v. Sun Oil Co.,* 605 F.2d at 1335-37; *see* H.R. 94–917, *supra,* at 4.

20. In *E.E.O.C. v. Klinger Electric Corp.,* 636 F.2d at 107, the court held:

The EEOC has fulfilled its statutory duty to attempt conciliation if it outlines to the employer the reasonable cause for its belief that Title VII has been violated, offers an opportunity for voluntary compliance, *and responds in a reasonable and flexible manner to the reasonable attitudes of the employer.* (Emphasis added.)

*See also Marshall v. Sun Oil Co.,* 605 F.2d 1334–39; *E.E.O.C. v. California Teachers Ass'n,* 534 F.Supp. 209, 213 (N.D.Cal.1982).

21. *Cf. E.E.O.C. v. Radiator Specialty Co.,* 610 F.2d at 183; *Marshall v. Sun Oil Co.,* 605 F.2d 1335–37; *Marshall v. Hartford Fire Ins. Co.,* 78 F.R.D. at 104; *E.E.O.C. v. Procter & Gamble Mfg. Co.,* 20 FEP Cases 170, 172 (D.C.Md. 1979).

22. *Cf. E.E.O.C. v. Airguide Corp.,* 539 F.2d 1038, 1041–42 (5th Cir.1976); *E.E.O.C. v. Raymond Metal Products Co.,* 530 F.2d at 595-96; *E.E.O.C. v. Kimberly-Clark Corp.,* 511 F.2d at 1360; *E.E.O.C. v. Pierce & Stevens Chemical Corp.,* 434 F.Supp. at 1166–67.

duties with respect to the allegations in paragraphs 13, 15, 18 and 22 through 36 of the Complaint. The Court finds that an evidentiary hearing is necessary, at which the parties may present evidence, affidavits and/or testimony on the issues outlined in the Order which follows this opinion.

C. *Jurisdiction*

One final point deserves mention. Assuming the Court finds, as a matter of fact, that the FEC has failed to comply with the statutory prerequisites to suit under the Act, it is a question of first impression, as far as this Court is able to determine, whether said failure deprives this Court of subject matter jurisdiction or simply authorizes the Court to stay the action pending remedial measures by the FEC to cure the error. In cases reviewing failure of the EEOC to comply with the prerequisites under Title VII, courts have held that a total failure on the part of the agency to comply destroys subject matter jurisdiction, but where there is some effort at notice and conciliation, albeit inadequate, the district court has subject matter jurisdiction over the action and the discretion to issue a stay of the case, pending cure of the defect, in lieu of dismissing without prejudice.[23] Title VII, unlike FECA, however, specifically provides that "Upon request, the court may, in its discretion, stay further proceedings for not more than 60 days pending . . . further efforts of the Commission to obtain voluntary compliance." 42 U.S.C. § 2000e–5(f)(1).

In cases reviewing the failure of the Secretary of Labor to comply with the prerequisites to suit under the ADEA, courts, citing explicit language in the legislative history of that Act, have held that dismissal for want of subject matter jurisdiction is unwarranted, and that a stay pending cure of either a total failure or an inadequate attempt to comply with the notification and conciliation requirements of the ADEA is appropriate.[24]

Until the Court is presented with a sufficient factual record on which it can determine whether the FEC fulfilled its statutory obligations under Section 437g, it would be premature to decide whether there exists subject matter jurisdiction to hear this case. In the interest of assisting the Court in deciding this question, assuming without deciding the FEC failed to provide adequate notice and attempt conciliation with respect to the allegations raised in paragraphs 13, 15, 18 and 22 through 36 of the Complaint, the Court requests that the parties submit supplemental briefs in accordance with the Order below. Such briefs should address the issue of whether FECA empowers this Court to issue a stay pending cure of the defects or requires this Court to dismiss.

## ORDER

NOW, THEREFORE, in accordance with the foregoing opinion, it is this 17th day of November, 1982,

ORDERED that the parties appear in Courtroom No. 14 on *Thursday, December 16, 1982*, at 10 A.M. for an evidentiary hearing at which time they shall introduce evidence into the record, including, but not limited to, the administrative record, affidavits, and/or oral testimony on the following factual issues:

1. Whether the issues covered by the FEC general counsel's brief to the FEC prior to its determination of probable cause included a recommendation that probable cause be found with respect to the violations alleged by plaintiff in paragraphs 13, 15, 18 and 22–36 of the Complaint.

2. Whether the defendants received actual notice, in writing or otherwise, that the general counsel had recom-

---

**23.** *E.E.O.C. v. Sears, Roebuck & Co.*, 650 F.2d at 19; *E.E.O.C. v. Magnolia Electric Power Ass'n*, 635 F.2d at 378 79; *E.E.O.C. v. Klinger Electric Corp.*, 636 F.2d at 107; *E.E.O.C. v. Zia Co.*, 582 F.2d at 533; *E.E.O.C. v. Sears, Roebuck & Co.*, 490 F.Supp. 1245 (M.D.Ala.1980).

**24.** *Compare Marshall v. Sun Oil Co.*, 605 F.2d at 1337–38 & n. 8 *and Marshall v. Newburg R–2 School District*, 469 F.Supp. at 1033 34 *with Brennan v. Ace Hardware Corp.*, 495 F.2d at 376.

mended that probable cause be found with respect to the violations alleged by plaintiff in paragraphs 13, 15, 18, and 22–36 of the Complaint.

3. Whether the affirmative vote by the FEC finding probable cause included the violations alleged by plaintiff in paragraphs 13, 15, 18 and 22–36 of the Complaint, and whether defendants were notified in writing or otherwise that such allegations were included in said determination.

4. What attempts were made by plaintiff and/or defendants to negotiate, conciliate, or otherwise informally settle, within the meaning of 2 U.S.C. § 437g, all of the violations alleged by the FEC in this suit.

and it is

FURTHER ORDERED that counsel for the parties shall meet in person no later than Friday, December 10, 1982, to exchange exhibits, other factual materials and supplemental briefs and to agree on the order of the presentation of evidence and witnesses. Counsel shall mark exhibits numerically and complete exhibit sheets in duplicate. The exhibit sheets shall be submitted to Ms. Sophie Lyman, Courtroom Clerk, no later than Monday, December 13, 1982. Please contact her to obtain the exhibit stickers (phone 535–3540, Room 1800, U.S. District Court); and it is

FURTHER ORDERED that the parties file supplemental briefs on Monday, December 13, 1982, addressed to the question of whether, assuming *arguendo* that the FEC had failed to adequately comply with the procedural prerequisites to suit, this Court should dismiss for want of subject matter jurisdiction or stay the proceedings pending cure of said defects.