**FEDERAL ELECTION COMMISSION, Plaintiff,**

v.

**Stephen ADAMS, Defendant.**

**Case No. CV 07–4419 DSF (SHx).**

United States District Court, C.D. California.

March 6, 2008.

Claire N. Rajan, David Kolker, Harry Summers, Thomasenia Duncan, Federal Election Commission, Washington, DC, for Plaintiff.

Alexander H. Cote, David C. Scheper, Mark E. Overland, Overland Borenstein Scheper & Kim, Los Angeles, CA, Brett G. Kappel, Joseph D. Lonardo, Vorys Sater Seymour and Pease, Washington, DC, Constance M. Komoroski, Constance M. Komoroski Law Offices, Pasadena, CA, for Defendant.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AS TO CERTAIN AFFIRMATIVE DEFENSES ALLEGED BY DEFENDANT

DALE S. FISCHER, District Judge.

On July 6, 2007, Plaintiff Federal Election Commission ("FEC") brought a Complaint claiming that Defendant Stephen Adams violated two provisions of the Federal Election Campaign Act of 1971, as amended and codified at 2 U.S.C. sections 431 through 455 ("Act"). The FEC alleged that during the two months prior to

the November 2004 presidential election, Defendant made a one million dollar independent expenditure to erect approximately 435 billboards advocating the reelection of President George W. Bush. The FEC claims that the manner in which Defendant made his independent expenditure violated two provisions of the Act. First, pursuant to Section 434(g)(2)(A) of the Act, Defendant was required to file a disclosure report with the FEC within forty-eight hours of making the independent expenditure. Second, pursuant to Section 441d(a)(3) of the Act, Defendant was required to have included a disclaimer on each billboard that included his name, permanent street address, telephone number, or web address and a statement that the communication was not authorized by any candidate or candidate's committee.

There are two motions before this Court. On January 14, 2008, Defendant filed a Motion To Dismiss Pursuant To Fed.R.Civ.P. 12(b)(1) ("Motion To Dismiss"). Also on January 14, 2008, the FEC filed a Motion for Partial Judgment on the Pleadings as to Certain Affirmative Defenses Alleged by Defendant ("Motion for Partial Judgment on the Pleadings"). The Court deems these matters appropriate for decision without oral argument. *See* Fed.R.Civ.P. 78; Local Rule 7–15.

Having read and considered the arguments and authorities raised in the parties' briefs and submissions, the Court DENIES Defendant's Motion To Dismiss and GRANTS Plaintiff's Motion for Partial Judgment on the Pleadings.

## I. FACTS

On or about June 1, 2004, Defendant hired Adams Outdoor Advertising, Inc. ("AOA") to design and install approximately 435 billboards for a multistate outdoor advertising campaign to support the reelection campaign of President George W. Bush in Michigan, Pennsylvania, Wisconsin, and South Carolina. (Compl. ¶ 20.) In or about August 2004, AOA and Defendant entered into a contract for the 435 billboards. (*Id.*) On or about September 7, 2004, Defendant wired one million dollars to AOA as payment for the design and installation of the billboards. (*Id.* ¶ 21.) AOA is the managing general partner in Adams Outdoor Advertising Limited Partnership. (*Id.* ¶ 6.) Defendant owns AOA Holding Company, which holds a 76% interest in Adams Outdoor Advertising Limited Partnership. (*Id.*)

The billboards first appeared on September 7, 2004 and were displayed through November 2, 2004, the date of the presidential election. (*Id.* ¶ 22.) The billboards contained one of five different phrases: (1) "Defending Our Nation"; (2) "It's About *Our* National Security"; (3) "A Nation Secure"; (4) "One Nation *Under* God"; and (5) "Boots Or Flip–Flops?" (*Id.* ¶ 23.) Each phrase was placed on a billboard above the slogan "Bush Cheney 04," which was superimposed on an image of the American flag. (*Id.*) The "Bush Cheney 04" slogan was substantially similar to the official logo of the Bush–Cheney '04 campaign. (*Id.*)

On September 28, 2004, the FEC received a sworn complaint from Mark Brewer of Michigan alleging that certain billboards erected by Defendant supporting George W. Bush's reelection campaign violated the Act. (*Id.* ¶ 7.) On October 8, 2004, the FEC received a complaint from Dennis Baylor of Pennsylvania alleging that certain billboards erected by Defendant supporting George W. Bush's reelection campaign violated the Act. (*Id.* ¶ 8.) The FEC provided copies of the complaints to Defendant. (*Id.* ¶ 9.) On November 15, 2004, Defendant submitted a response to the complaints. (*Id.*)

On June 21, 2005, Defendant was notified by letter that the FEC, by an affirma-

tive vote of at least four members, after reviewing the two complaints, Defendant's response, and additional information obtained during the normal course of operations, found reason to believe that Defendant violated two provisions of the Act. (*Id.* ¶ 10.) First, the FEC found reason to believe that Defendant failed to properly disclose his one million dollar independent expenditure to the FEC, in violation of 2 U.S.C. § 434(g)(2)(A). (*Id.*) Second, the FEC found reason to believe that Defendant also failed to include a proper disclaimer on the billboards indicating that the billboards were not authorized by President Bush's reelection campaign in violation of 2 U.S.C. § 441d(a)(3). (*Id.*)

On March 2, 2006, following an investigation, the general counsel of the FEC sent Defendant a letter, which stated that he/she was prepared to recommend that the FEC find probable cause that Defendant violated the above provisions of the Act. (*Id.* ¶ 11.) Defendant was also provided with a document outlining the general counsel's position on the factual and legal issues of the case. (*Id.*) Defendant filed a response brief. (*Id.*)

On November 8, 2006, after reviewing all the facts, including Defendant's response brief, the FEC, by an affirmative vote of at least four members, found probable cause that Defendant violated the above two provisions of the Act. (*Id.*) On November 15, 2006, Defendant was sent a letter documenting the FEC's determination along with a proposed conciliation agreement. (*Id.*)

The FEC then attempted for a period of not less than thirty days to correct Defendant's violation by entering into a conciliation agreement through informal means of conference, conciliation, and persuasion. (*Id.* ¶ 12.) The FEC and Defendant were unable to enter into a conciliation agreement. (*Id.* ¶ 13.) On May 22, 2007, Defendant was notified that the FEC, by an affirmative vote of at least four members, authorized the initiation of a civil enforcement suit. (*Id.*)

## II. LEGAL STANDARD

### A. Rule 12(b)(1) Motion

Federal courts "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (citation omitted). Consequently, it is presumed that a federal court lacks jurisdiction unless it is affirmatively demonstrated that jurisdiction exists. *See Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968–69 (9th Cir.1981). The burden of establishing subject matter jurisdiction rests on the party advocating its existence. *See Cal. ex rel. Younger v. Andrus*, 608 F.2d 1247, 1249 (9th Cir.1979). Federal courts are to determine issues of subject matter jurisdiction before considering the merits of a case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Therefore, a federal court without jurisdiction over certain claims has no choice but to dismiss them regardless of their gravity or potential validity.

A party challenging a court's jurisdiction through a Rule 12(b)(1) motion may do so in one of two ways: (1) on the face of the pleadings or (2) by presenting extrinsic evidence for the court's consideration. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual").

A facial attack exists when a Defendant argues that the allegations in the complaint, on their face, are insufficient to invoke federal jurisdiction, regardless of the factual basis. In resolving a facial attack, the court accepts the allegations in the complaint as true and will only grant

the motion if the plaintiff failed to allege an necessary element for subject matter jurisdiction. *See Haw. Disability Rights Ctr. v. Cheung,* 513 F.Supp.2d 1185, 1189–90 (D.Haw.2007).

When analyzing a factual attack a court "may consider the evidence presented with respect to the jurisdictional issue and rule on the issue, resolving factual disputes if necessary." *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.,* 594 F.2d 730, 733 (9th Cir.1979). Where the jurisdictional issues and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues that go to the merits of the case, the jurisdictional determination should not be made until a motion directed toward the merits of the action or trial. *See Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983); *Thornhill,* 594 F.2d at 733–34.

Unlike a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court is not required to accept all of the nonmoving party's factual allegations as true. *See Pegasus Satellite Television, Inc. v. DirecTV, Inc.,* 318 F.Supp.2d 968, 975 (C.D.Cal.2004). Instead, "[t]he district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988); *see also Ass'n of Am. Med. Colls. v. United States,* 217 F.3d 770, 778 (9th Cir.2000) (recognizing that a district court "obviously does not abuse its discretion by looking to this extra-pleading material in deciding the issue, even if it becomes necessary to resolve factual disputes").

**B. Rule 12(c) Motion**

"Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir.1990). The standard applied to a motion for judgment on the pleadings under Rule 12(c) is "functionally identical" to the standard applied to motions under Rule 12(b)(6) for failure to state a claim. *Dworkin v. Hustler Magazine, Inc.,* 867 F.2d 1188, 1192 (9th Cir.1989). Allegations by the nonmoving party must be accepted as true, while allegations of the moving party that have been denied must be deemed false for the purpose of the motion. *See Hal Roach Studios,* 896 F.2d at 1550. The Court is not required to accept as true "legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged," or "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Cholla Ready Mix, Inc. v. Civish,* 382 F.3d 969, 973 (9th Cir.2004) (citation omitted).

Judgment on the pleadings may be granted as to fewer than all of the claims, or as to part of a claim. *See Chi–Mil Corp. v. W.T. Grant Co.,* 70 F.R.D. 352, 358 (E.D.Wis.1976) (analogizing to Rule 56). Courts have discretion to grant a Rule 12(c) motion with leave to amend, and may dismiss causes of action rather than grant judgment. *See Amersbach v. City of Cleveland,* 598 F.2d 1033, 1038 (6th Cir. 1979); *Lonberg v. City of Riverside,* 300 F.Supp.2d 942, 945 (C.D.Cal.2004).

**III. DISCUSSION**

**A. This Court Has Subject Matter Jurisdiction**

Defendant contends that this Court should dismiss the Complaint on the grounds that the FEC failed to meet its statutory obligation to make a good faith effort to conciliate prior to filing suit. The FEC claims that it attempted on multiple occasions to enter into a conciliation agree-

ment with Defendant. Further, the FEC argues that in determining whether adequate conciliation attempts were made, the Court should not review the substance of the negotiations; instead, the Court should defer to the FEC's position that the negotiation attempts were made in good faith.

Defendant's motion is a factual, not facial, challenge to the Complaint. As part of establishing this Court's jurisdiction, the FEC stated that it satisfied all jurisdictional requirements prior to filing this action by attempting, for a period of at least thirty days, to enter into a conciliation agreement with Defendant. (*See* Compl. ¶¶ 12, 14.) Defendant challenges the FEC's claim and asserts that the FEC did not "fulfill its statutory obligations when it unilaterally refuse[d] to engage in meaningful conciliation efforts to the potential harm or prejudice of the defendant." (Mot. To Dismiss 7:2–4.) Determining whether conciliation occurred is a prerequisite to filing suit and does not relate to the underlying allegations. (*See* Compl. ¶¶ 12–14; Mot. To Dismiss 6:9–19.) As a result of Defendant's factual challenge, the Court is not restricted to the facts pleaded in the Complaint; it may review facts not pleaded in the Complaint to determine whether subject matter jurisdiction exists. *See McCarthy*, 850 F.2d at 560; *Ass'n of Am. Med. Colls.*, 217 F.3d at 778.

As explained below, the Court (1) finds that the FEC satisfied the Act's presuit requirements by "attempting" to conciliate with Defendant on at least three occasions and (2) will defer to the FEC rather than analyze the substance of any conciliation proposal.

## 1. The FEC Made At Least Three Attempts To Enter into a Conciliation Agreement with Defendant Prior to Filing Suit

The FEC is an independent agency of the United States government and is charged with the responsibility to administer and ensure compliance with the Act. *See* 2 U.S.C. §§ 437c, 437d, 437g. In response to an alleged violation of the Act, the FEC has the authority to investigate the alleged violation and, when necessary, to initiate a civil action to enforce the provisions of the Act. *See* 2 U.S.C. §§ 437c(b)(1), 437d(e).

After the FEC, by an affirmative vote of at least four members, determines that there is probable cause to believe that a person has violated the Act, "the Commission shall attempt, for a period of at least 30 days, to correct or prevent such violation by informal methods of conference, conciliation, and persuasion, and to enter into a conciliation agreement with any person involved." 2 U.S.C. § 437g(a)(4)(A)(i). The conciliation period is to last "for a period of not more than 90 days." *Id.* Given that Congress intended the Act to encourage settlement, however, there is nothing in the Act that prevents the parties from entering into a conciliation agreement finalized more than ninety-days after the FEC's finding of probable cause. *See FEC v. Nat'l Rifle Ass'n of Am.*, 553 F.Supp. 1331, 1341 n. 2 (D.D.C.1983). Only after the mandatory conciliation period has expired may the FEC file suit. 2 U.S.C. § 437g(a)(6)(A)–(B).

To satisfy the presuit requirements of the Act, the FEC is required to "attempt" to enter into a conciliation agreement with a defendant. When the Act was amended in 1980, Pub. L. 96–187, 93 Stat. 1339, Congress changed the FEC's duty regarding conciliation. Prior to the 1980 amendment, the FEC was to "make every endeavor" to reach a conciliation agreement. 2 U.S.C. § 437g(5)(A) (1976); Pub. L. 93–443, 88 Stat. 1263. In 1980, however, the Act was amended to read that the FEC "shall attempt ... to correct or prevent such violation by infor-

mal methods of conference, conciliation, and persuasion." Pub. L. 96–187, 93 Stat. 1339; 2 U.S.C. § 437g(a)(4)(A)(i). In other words, the Act requires the FEC to engage in a negotiation with a defendant, but does not require the FEC to continue negotiations until a conciliation agreement is reached. *See FEC v. Club For Growth, Inc.*, 432 F.Supp.2d 87, 92 (D.D.C.2006) (finding that the Act "requires that the FEC come to the conciliation table"); *FEC v. Nat'l Rifle Ass'n*, 553 F.Supp. at 1339 (recognizing that the FEC "is not bound to accept a conciliation agreement which it finds unacceptable or inconsistent with the fair administration of the Act"). For an adequate "attempt," the FEC is to provide a defendant with "a fair opportunity to review and respond to the FEC's findings" regarding the activities that comprise the alleged violation. *FEC v. Nat'l Rifle Ass'n*, 553 F.Supp. at 1339.

■ On November 8, 2007, the FEC determined that there was probable cause to believe that Defendant violated the Act. (Compl. ¶ 12.) On November 15, 2006, the FEC notified Defendant of the finding of probable cause and provided a proposed conciliation agreement seeking a civil penalty of $106,000. (*Id.*; Mot. To Dismiss Ex. C at 5.) Thereafter, the FEC and Defendant had at least one telephone conversation to discuss the terms of the proposed conciliation agreement, specifically the civil penalty. (Mot. To Dismiss Exs. D, E.) On December 14, 2007, after the parties discussed the FEC draft conciliation agreement over the telephone, Defendant submitted a letter and a proposed revised conciliation agreement to the FEC, offering to pay $31,000 as a civil penalty. (*Id.* Ex. D.) On May 22, 2007, the FEC sent a letter formally rejecting the revised conciliation agreement. (Compl. ¶ 13; Mot. To Dismiss Ex. E.) After the FEC voted to authorize the filing of a suit, but before the suit was filed, the parties again attempted to reach a conciliation agree-ment. On July 2, 2007, the FEC sent a letter to Defendant formally rejecting his offer of $56,000. (Pl.'s Opp'n to Def.'s Mot. To Dismiss Ex. A.)

Despite this sequence of events, Defendant contends that the FEC did not properly attempt to conciliate because the FEC did not formally respond to his revised conciliation agreement in a timely fashion. (*See* Mot. To Dismiss 10–13.) The Court disagrees. Even viewing only the facts presented by Defendant, and not considering the parties' attempt to reach a settlement agreement more than ninety days after the FEC's finding of probable cause, the facts demonstrate that FEC attempted on at least two occasions to reach a conciliation agreement.

First, the FEC sent a conciliation agreement to Defendant with a cover letter that outlined the conciliation process and stated that if a conciliation agreement could not be reached after thirty days, the FEC might institute a civil suit. (*Id.* Ex. C at 1.) The FEC signaled that it was open to discuss the terms of the proposed conciliation agreement by inviting Defendant to contact a specific attorney at the FEC, phone number included, who would explain "the rationale for the agreement's proposed civil penalty" and that the FEC "would like to have this conversation at your earliest convenience." (*Id.*)

Second, after the FEC sent its proposed conciliation agreement, the FEC and Defendant held a telephone conversation wherein they discussed the methodology behind calculating the civil penalty. (*Id.* Exs. D, E.) After speaking about the FEC's proposed conciliation agreement, Defendant sent the FEC a counter-proposal. (*See id.* Ex. D.)

Defendant contends that a proper attempt at conciliation did not occur because the FEC did not timely respond to his counter-proposal. For support, Defendant states that the FEC improperly delayed

the conciliation process by failing to respond to his counter-proposal until "4 months and 1 day (or 121 days) after timely receipt of proposed conciliation agreement, and 62 days **after** expiration of the 90 day maximum conciliation period." (*Id.* 10:10–12.) The FEC does not dispute this point. Instead, the FEC argues that it only had to respond to Defendant's counter-proposal "if the agreement were acceptable ... [and] ... silence in response was a rejection of defendant's counteroffer." (Pl.'s Opp'n to Def.'s Mot. To Dismiss 15 n. 7.) While the FEC may have intended to reject Defendant's counter-proposal, the 121 day delay did not adequately convey that message. The FEC's delay may have been bad form; however, it is not sufficient to deprive the Court of subject matter jurisdiction.

The FEC satisfied its statutory requirement by attempting to enter into a conciliation agreement on at least three occasions.

### 2. The FEC Is Entitled To Deference as to the Substance of the Conciliation Process and in Formulating the Specifics of a Proposed Conciliation Agreement

 The FEC is "precisely the type of agency to which deference should presumptively be afforded," *FEC v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 38, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981), in part because the FEC is "inherently bipartisan in that no more than three of its six voting members may be of the same political party ... and it must decide issues charged with the dynamics of party politics, often under the pressure of an impending election." *Id.* at 37, 102 S.Ct.

38. In assessing whether the FEC complied with the statutory requirement to attempt to enter into a conciliation agreement with a defendant, a court shows high deference to the agency's action. *See Hagelin v. FEC,* 411 F.3d 237, 244 (D.C.Cir.2005) (citation omitted).

 Therefore, this Court follows the circuits and its district court colleagues that have found that district courts are not to analyze the substance of the conciliation process; rather, the agency satisfies the statutory requirement to conciliate if the opposing party has the opportunity to confront all the issues. *See EEOC v. Delight Wholesale Co.,* 973 F.2d 664, 669 (8th Cir. 1992);[1] *EEOC v. Keco Indus., Inc.,* 748 F.2d 1097, 1101–02 (6th Cir.1984) ("The district court should only determine whether the EEOC made an attempt at conciliation. The form and substance of those conciliations is within the discretion of the EEOC as the agency created to administer and enforce our employment discrimination laws and is beyond judicial review."); *EEOC v. St. Anne's Hosp.,* 664 F.2d 128, 131 (7th Cir.1981); *EEOC v. Zia Co.,* 582 F.2d 527, 533 (10th Cir.1978); *EEOC v. Lawry's Rests., Inc.,* 2006 WL 2085998, at \*2 (C.D.Cal.2006); *EEOC v. Hometown Buffet, Inc.,* 481 F.Supp.2d 1110, 1113–14 (S.D.Cal.2007); *United States v. Cal. Dept. Of Corr.,* 1990 WL 145599, at \*7 (E.D.Cal.1990).

Accordingly, the Court DENIES Defendant's Motion To Dismiss.

### B. The Court Grants Plaintiff's Motion for Partial Judgment on the Pleadings

The FEC seeks dismissal of six of Defendant's eight affirmative defenses in the

---

**1.** Both parties have cited cases involving the Equal Employment Opportunity Commission ("EEOC") because its conciliation requirement is similar to that of the FEC. Many courts that have analyzed the Act have also drawn comparisons between the conciliation requirements of the FEC and EEOC. *See e.g., FEC v. Club For Growth, Inc.,* 432 F.Supp.2d at 91.

interest of judicial efficiency, to avoid unnecessary discovery, and for the lack of a valid legal basis. The Defendant claims it is premature to dismiss any affirmative defenses before adequate discovery has been conducted. The Court agrees with the FEC and finds that the six challenged affirmative defenses, as a matter of law, have no valid basis. The discovery of additional facts will not validate the challenged affirmative defenses.

The FEC challenges the following:

(1) First Affirmative Defense: "The Federal Election Commission has failed to satisfy all of the jurisdictional requirements under the Federal Election Campaign Act of 1971, which are prerequisites to filing this action."

(2) Second Affirmative Defense: "This court lacks jurisdiction over this action because the Federal Election Commission failed to conciliate this matter with Stephen Adams as required by the Federal Election Campaign Act, 2 U.S.C. § 437g(a)(4)(A)(I), prior to the filing of a lawsuit in federal court."

(3) Third Affirmative Defense: "The provisions of the Federal Election Campaign Act of 1971 at 2 U.S.C. § 434(g)(2)(A), are unenforceable against Defendant Stephen Adams because such enforcement violates the First Amendment and Due Process Clause of the United States Constitution."

(4) Fourth Affirmative Defense: "The provisions of the Federal Election Campaign Act of 1971, as amended, at 2 U.S.C. § 434(g)(2)(A) are unenforceable against individuals such as Stephen Adams for the reasons that this Section has not been affectively [*sic*] promulgated or disclosed to the general public."

(5) Fifth Affirmative Defense: "The Federal Election Campaign Act, at 2 U.S.C. § 437(g)(2)(A) has not been enforced by the Federal Election Commission against individuals, and it violates both the First Amendment and the Due Process Clause of the United States Constitution to selectively enforce this provision against Stephen Adams."

(6) Eighth Affirmative Defense: "The Federal Election Commission is estopped to assert the causes of action contained in the Complaint against Stephen Adams."

(Answer 6:20–8:1.) These affirmative defenses can be separated into two basic categories: (1) the Court lacks jurisdiction because the FEC failed to properly conciliate with Defendant (Affirmative Defenses One and Two) and (2) the FEC's attempt to penalize Defendant for the two alleged violations of the Act violates Defendant's rights under the First Amendment and Due Process Clause of the United States Constitution (Affirmative Defenses Three, Four, Five, and Eight).

### 1. Defendant's Affirmative Defenses One and Two

Defendant's first two affirmative defenses echo the arguments contained in his Motion To Dismiss.

For the reasons previously discussed, the Court GRANTS Plaintiff's Motion for Partial Judgment on the Pleadings dismissing Defendant's Affirmative Defenses One and Two.

### 2. Defendant's Affirmative Defenses Three, Four, Five, and Eight

The Defendant argues that on the completion of discovery, he will be able to establish that the disclosure and reporting provisions of the Act violate the First Amendment and the Due Process Clause

of the United States Constitution. First, Defendant alleges he will be able to demonstrate that a monetary penalty for failing to include an adequate disclaimer on the billboards and failing timely to file a proper disclosure with the FEC violates the First Amendment because he was engaging in political speech, which is "entitled to the highest protection under the First Amendment" and that the FEC "may not constitutionally seek to impose a penalty on Adams for his alleged violation of 2 U.S.C. § 441d(a)(3)." (Def.'s Opp'n to Pl.'s Mot. for J. on the Pleadings 7:7–8, 19–21.) Second, Defendant contends that the Due Process Clause has been violated because a penalty may not be assessed for the violation of a statute when that statute is unknown or violations are rarely enforced. (*Id.* at 7:23–26.)

Defendant's affirmative defenses are ripe for consideration because the Motion for Partial Judgment on the Pleadings raises only legal issues.

**a. Defendant's First Amendment Challenge Has Been Addressed and Rejected by the Supreme Court and the Ninth Circuit**

■ To the extent that Defendant's affirmative defenses rely on the First Amendment, the defenses must be dismissed. Defendant argues that the maximum monetary penalty that can be sought by the FEC, calculated using the statutory formula, for failing to include proper disclaimers on his billboards and timely file the appropriate disclosures with the FEC has "extremely serious First Amendment implications." (Def.'s Opp'n to Pl.'s Mot. for J. on the Pleadings 7:5.) Additionally, Defendant contends that "express advocacy of the re-election of his preferred candidates for President and Vice President is core political speech entitled to the highest protect under the First Amendment." (*Id.* at 7:6–8.) For support, Defendant bases his First Amendment argument on *Buck-*

*ley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), one of the first Supreme Court cases to determine the First Amendment implications of campaign finance laws. Defendant's reliance on *Buckley* is misplaced.

There, the Supreme Court reviewed a challenge to the constitutionality of the Act, as amended in 1974. The Court held, *inter alia,* that the limitations placed by the Act on campaign expenditures violated the First Amendment in that they directly restrained the rights of citizens, candidates, and associations to engage in protected political speech. *See Buckley,* 424 U.S. at 39–59, 96 S.Ct. 612. More importantly, however, the Court upheld the provisions of the Act that placed a limit on the contributions that individuals and political committees could make. The Court reasoned that contribution limits did not directly infringe the First Amendment freedoms of contributors to express their own political views, and that such limitations served important governmental interests in preventing the corruption or appearance of corruption of the political process that might result if such contributions were not restrained. *Cal. Med. Ass'n v. Fed. Elec. Comm'n,* 453 U.S. 182, 193–94, 101 S.Ct. 2712, 69 L.Ed.2d 567 (1981) (citing *Buckley* ).

Likewise, the Court held that the Act's disclosure requirements were constitutional and did not violate the First Amendment. In so finding, the Court described disclosure requirement as "Congress' effort to achieve 'total' disclosure' by reaching 'every kind of political activity' in order to insure that the voters are fully informed and to achieve through publicity the maximum deterrence to corruption and undue influence possible." *Buckley,* 424 U.S. at 76, 96 S.Ct. 612 (citation omitted). Thus, the Court upheld the Act's disclosure requirements and found that it was "narrow-

ly limited" to information that has a "substantial connection with the governmental interest sought to be advanced" and that the burden is a "reasonable and minimally restrictive method of furthering First Amendment values by opening the basic process of our federal election system to public view." *Id.* at 81, 96 S.Ct. 612.

Similarly, in *FEC v. Furgatch*, 807 F.2d 857 (9th Cir.1987), the Ninth Circuit held that the Act's disclosure and disclaimer requirements did not violate the First Amendment. There, the defendant purchased advertising space in the *New York Times* and *The Boston Globe* and printed a message encouraging readers to vote against President Carter during the 1980 presidential election. The FEC brought a civil action against the defendant for failing to report his expenditures in purchasing the advertisement and failing to include a proper disclaimer in one of the advertisements. *See Furgatch*, 807 F.2d at 859. In rejecting the defendant's First Amendment argument, the Court concluded that "the Act's disclosure provisions serve an important Congressional policy and a very strong First Amendment interest. Properly applied, they will have only a 'reasonable and minimally restrictive' effect on the exercise of First Amendment rights." *Id.* at 862 (*quoting Buckley*, 424 U.S. at 82, 96 S.Ct. 612). The Court reached its conclusion after finding that the Act serves two important goals: (1) the "disclosure requirements, which may at time inhibit the free speech that is so dearly protected by the First Amendment, are indispensable to the proper and effective exercise of First Amendment rights" and (2) the "disclosure provision is to deter or expose corruption, and therefore to minimize the influence that unaccountable interest groups and individuals can have on elected federal officials." *Id.*

The Supreme Court and Ninth Circuit have expressly held that while provisions of the Act may infringe on some First Amendment freedoms, such infringement is minimal and reasonable to keep the electorate fully informed about the source of campaign funds and to deter or expose corruption. Defendant's First Amendment challenge fails.

**b. Defendant's Affirmative Defenses Alleging a Due Process Clause Violation Fail as a Matter of Law**

■ Defendant's claim that the Act violates the Due Process Clause rests on his argument that the FEC is seeking to impose a civil penalty based on a statute that is not well known or is rarely enforced. (*See* Def.'s Opp'n to Pl.'s Mot. for J. on the Pleadings 7:23–27.) To support his contention, Defendant cites only *Diebold, Inc. v. Marshall*, 585 F.2d 1327 (6th Cir.1978). *Diebold* is inapposite. Diebold was fined $190 for violating a safety regulation of the Occupational Safety and Health Act of 1970. The Administrative Law Judge found that a second regulation conflicted with and exempted Diebold from the safety regulation and vacated the penalty. *Id.* at 1330. The Occupational Safety and Health Review Commission ("OSHRC") reversed the Administrative Law Judge and Diebold brought suit contending that the safety regulation was vague and violated due process. *Id.* The court agreed and found that the safety regulation, as applied to Diebold, constituted a due process violation, for three reasons: (1) the "inartful drafting" of the safety regulation; (2) the average employer was "unaware" of the safety regulation; and (3) a "clear majority of Administrative Law Judges had held [the regulation] inapplicable" as applied to Diebold. *Id.* at 1336. That court made it clear that while "none of these factors is particularly compelling on its own, their cumulative effect is such that we cannot ignore it." *Id.* at 1337. Thus, the court ultimately found that Diebold did not re-

ceive constitutionally sufficient warning of the safety regulation and reversed the OSHRC's decision.

Therefore, *Diebold* stands for the limited proposition that a Due Process Clause violation may occur when the three specific factors listed above are present and each factor alone is insufficient to establish a Due Process Clause violation. *See id.* Defendant does not claim that all three *Diebold* factors are present here. Specifically, Defendant does not make a claim that there was "inartful drafting" of the Act; rather, he claims that the Act was not known by the "members of the affected industry" and "the pattern of administration enforcement demonstrated that the regulation had not been generally enforced." (Def.'s Opp'n to Pl's Mot. for J. on the Pleadings 5:17–20.) Moreover, the facts in *Diebold* are very different than those in the instant case. The issue in *Diebold* was created by the existence of a second, conflicting safety regulation, which created much confusion among members of the industry and administrative law judges. In this case, Defendant does not contend that there was a second, conflicting provision in the Act that created similar confusion.

Additionally, Defendant supports his affirmative defenses by claiming that "virtually no one was aware of [the disclosure] requirement at the time of the 2004 general election." (*Id.* at 8:4–5.) However, Defendant concedes that the disclosure requirement was adopted in 2002, two years before the 2004 general election. (*See id.* at 7:27–8:5.) Given that the requirement was adopted in 2002, Defendant does not provide any details as to why the disclosure requirement was not properly promulgated. *See Texaco, Inc. v. Short,* 454 U.S. 516, 532, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982) (noting that in general "a legislature need do nothing more than enact and publish the law, and afford the citizen-

ry a reasonable opportunity to familiarize itself with its terms and to comply.") Defendant also concedes that during the two months prior to the 2004 general election ten individuals filed the proper disclosure with the FEC. (*See* Def.'s Opp'n to Pl's Mot. for J. on the Pleadings 8:5–8 n. 3.)

Moreover, Defendant fails to present any evidence or argument that the FEC decided to bring suit based on improper or discriminatory grounds. *See United States v. McWilliams,* 730 F.2d 1218, 1221 (9th Cir.1984) (finding that a claim for selective prosecution must be based on "an impermissible ground such as race, religion, or exercise of the constitutional rights"). Therefore, this Court finds that it does not have "statutory authority to review the FEC's decision to sue." *FEC v. Legi–Tech, Inc.,* 75 F.3d 704, 709 (D.C.Cir.1996).

Accordingly, the Court GRANTS Plaintiff's Motion for Partial Judgment on the Pleadings dismissing Defendant's Affirmative Defenses Three, Four, Five, and Eight.

## IV. CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion To Dismiss and GRANTS Plaintiff's Motion for Partial Judgment on the Pleadings.

IT IS SO ORDERED.